JSG

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2580 | **DATE** | 7/30/2003 |
| **CASE TITLE** | In Re: In the Matter of Midway Airlines | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. The decision of the Bankruptcy Court is affirmed. This is a final judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 3 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In the Matter of ) | |
| ) | 03 C 2580 |
| MIDWAY AIRLINES, INC., ) | |
| MIDWAY AIRLINES (1987), INC. and ) | Judge John A. Nordberg |
| MIDWAY AIRCRAFT ENGINEERING, INC., ) | |
| ) | On appeal from the United States |
| Debtors. ) | Bankruptcy Court for the Northern |
| ) | District of Illinois, Eastern Division, |
| ) | Honorable Carol A. Doyle, |
| APPEAL OF MONARCH AIR SERVICE, INC. ) | presiding (02 A 01070) |

DOCKETED JUL 3 1 2003

## MEMORANDUM OPINION AND ORDER

This matter is before this Court on appeal from the decision of the United States Bankruptcy Court for the Northern District of Illinois, which granted summary judgment to the trustee, holding that Monarch Air Service, Inc. does not have a common law lien securing its post-petition administrative claim. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

The material facts are not in dispute. Sheldon L. Solow is the chapter 7 trustee (the "Trustee") for the estates of Midway Airlines, Inc., Midway Airlines (1987), Inc., and Midway Aircraft Engineering, Inc. (collectively, the "Debtors"). Monarch Air Service, Inc. ("Monarch") is an Illinois corporation.

On August 28, 1990, Monarch entered into an agreement to provide airport fueling services to Midway Airlines at Midway Airport in Chicago. As part of this contract, Monarch had possession of the Debtors' fuel.

On March 25, 1991 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and subsequently managed their estates as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. Also on the Petition Date, the Debtors commenced an adversary proceeding against a number of vendors and suppliers, including Monarch, seeking to bar them from terminating or suspending performance under pre-petition industry agreements. On March 26, 1991, the Bankruptcy Court ordered certain of these vendors, including Monarch, to continue to provide services to the Debtors.

These cases were subsequently converted to cases under Chapter 7 of the Bankruptcy Code, two were converted on November 27, 1991, and the third was converted on March 9, 1992. Sheldon L. Solow was appointed Trustee on November 27, 1991.

On June 18, 1991, Monarch filed a proof of an unsecured claim in the amount of $75,644.59 on account of pre-petition services.

On January 27, 1992, the Bankruptcy Court entered an order authorizing the sale of certain jet fuel inventory to Mobile Oil Corporation and Northwest Airlines, Inc. The sale order provided "Liens, including warehousemen's liens and other possessory liens, shall attach to the proceeds [of the sale]."

On or about March 15, 1992, Monarch informed the Trustee that it believed it held a possessory lien in the proceeds of the sale. By letter dated March 16, 1992, the Trustee informed Monarch that the sale proceeds would be placed in escrow pending determination of the validity of Monarch's lien. These sale proceeds continue to be held in escrow today.

On April 29, 1992, Monarch filed two secured proofs of claim each purporting to amend or replace Monarch's original unsecured proof of claim filed in June of 1991, one in the amount

of $75,644.59, assigned claim #17945 by the Trustee ("Claim 1"), and the other in the amount of $112,583.19, assigned claim #14387 by the Trustee ("Claim 2"). Claim 2, which is the focal point of this appeal, included both pre- and post-petition amounts claimed by Monarch.

On May 18, 1993, the Bankruptcy Court entered an order allowing Monarch an administrative expense claim in the amount of $36,638.60. The order did not state whether Monarch's claim was secured or unsecured. (Ex. R Trustee's App.)

Approximately eight years later, in 2001, the Trustee filed a motion for approval of a claims resolution procedure. The Trustee sought authority to communicate claim objections to post-petition claimants by sending them a notice of the Trustee's objection and informing them of their right to a hearing if their claim could not be resolved consensually. On June 11, 2001, the Bankruptcy Court granted the motion and entered a claims procedure order authorizing the Trustee to resolve the disputed claims by this negative notice procedure.[1]

Pursuant to this procedure, on July 20, 2001, the Trustee served a claim objection regarding Claim 2. The Trustee objected that $75,644.59 of this claim was incurred pre-petition and that it lacked sufficient documentation. This objection was sent to Monarch's general counsel, Alfred P. Bianucci, who was the party designated by Monarch to receive such notices. It contained four pages. (*See* Ex. O Trustee's App.) The second page was entitled "Notice Regarding Objections To Claims And Response Requirement" and contained general information about the claims objection process. It stated:

---

[1] According to the Trustee, there were approximately 11,000 claims filed in these cases.

> To all parties in interest whose claims are the subject of an objection:
>
> Please be advised that the Midway Trustee has filed an objection to your proof of claim.
>
> Your claim has been objected to for the reasons set forth under the heading "Summary of Objection." In most cases, the primary basis for the objection was the fact that the amount claimed did not reconcile to Midway's records.
>
> In the event you disagree with the objection to your claim, you are required to file with the Clerk of the Bankruptcy Court a written response to the objection on or before the date set forth in the objection. Your response must (a) contain a complete written statement of all reasons supporting your opposition to the objection and (b) attach copies of all documentary evidence in your possession, custody, or control upon which you intend to rely in support of your claim. If your response contests the objection, the matter will be scheduled by the court for a hearing, and you will be provided with a separate notice of the date, time, and place of that hearing.
>
> If you consent to the objection or otherwise agree to the proposed treatment of your claim, kindly return to the Clerk a completed Consent to Treatment of Claim form which is enclosed with this notice. Upon receipt of your consent, an order will be entered by the Court that will treat your claim as allowed or disallowed in the amount set forth in the objection.
>
> In the event that you fail to file a timely response to the objection, you will be deemed to have no opposition to the relief sought by the objection. The Trustee then will submit to the Court a proposed form of order granting the relief requested that the Court will consider without further notice or hearing.

(*Id.*)

The third page of the objection was entitled "Summary of Objection" and described the specific objection to Monarch's claim as well as the Trustee's proposed treatment of the claim:

-4-

CLAIMANT NAME ............................... MONARCH AIR SERVICE, INC.

CLAIM NUMBER ............................. 14387

CLAIMED AMOUNT ............................. $112,583.19

PROPOSED ALLOWED AMOUNT ** ... $36,938.60

EXPLANATION OF OBJECTION:

1   Not self-sustaining: the claim that you filed has no backup and/or lacks documentation to support the amount that you claim is owed to you.

2   Prepetition Claim Item: The claim that you filed has one or more items that are classified prepetition. (Pre-petition = on or prior to the Chapter 11 filing of March 25, 1991.) No distribution will be made to pre-petition claims because the Estate lacks funds to pay all post-petition claims in full.

** Your distribution will be a percentage of your Allowed Amount.

(*Id.*)

The fourth page of the objection was entitled "Consent To Treatment Of Claim" and contained a blank signature and date line to be filled in by the claimant. The objection form stated that Monarch must file a response with the Clerk of the Bankruptcy Court by August 17, 2001. On August 3, 2001, Monarch's president (Matthew J. Lynch) signed and returned the consent form, consenting to the "relief requested in the objection to claim served." (Ex. P

Trustee's App.) On January 17, 2002, the Bankruptcy Court entered an order disallowing $75,644.59 of Claim 2.[2]

On August 7, 2002, the Trustee filed an adversary complaint against Monarch to determine the validity of Monarch's purported lien in the sale proceeds that are being held in escrow. The Trustee asserted in the complaint that Monarch did not have a lien on the proceeds of the jet fuel that was serviced by Monarch because this fuel was used up and replaced with new fuel on a daily basis and, therefore, if Monarch held a possessory lien, the fuel was used up well before the January 28, 1992 sale took place. The Trustee did not assert in the complaint that Monarch had waived its lien claim by signing the consent form. After both parties informed the Bankruptcy Court that there were no issues of material fact, the Bankruptcy Court set a briefing schedule for cross-motions for summary judgment. The matter was fully briefed. In their briefs, the parties focused primarily on the issue of whether Monarch in fact did have a valid possessory lien, and the Trustee did not make a formal argument that Monarch had waived its lien claim by filing the consent.

On February 5, 2003, the parties appeared before the bankruptcy Judge who came to court with a prepared ruling that she read into the record at the end of the hearing (*see* 2/5/03 Tr. 15-25). Before reading her ruling, she told that parties that her ruling did not address the substantive issue of whether Monarch had a common law possessory lien, which is the issue the parties

---

[2]Although not relevant to this appeal, on May 24, 2002, the Trustee objected to Claim 1 by serving a second objection (similar to the first one), which established June 22, 2002 as the deadline for filing an objection. The Trustee objected that Claim 1 was a duplicate claim. Monarch failed to file a response and therefore consented to the Trustee's treatment of Claim 1.

-6-

focused on in their briefs, because she concluded that Monarch had waived any such claim by signing the consent form.

At this point, counsel for Monarch argued that the consent only applied to the pre-petition claim (*i.e.* the $75,644.59 portion of the total amount of $112,583.19) and did not apply to the post-petition administrative expense claim of $36,938.60. Counsel asked whether the Judge was ruling that the consent also constituted a waiver of the post-petition lien. In the ensuing colloquy (Tr. 6-15), the Judge explained why she believed that the consent also constituted a waiver of the post-petition lien.[3]

To summarize her ruling, the Judge acknowledged that Monarch had filed a proof of claim in 1992 asserting the secured status of its post-petition claim.[4] The Judge concluded, however, that Monarch should have made some effort during the claims objection process to assert its lien claim:

> So even though there was this order out there, you know, back in the old days, preserving any liens anybody might have, when we go through the whole claims process, that is the time to assert your security interest.

\* \* \*

> [T]hat was the time, in the claim objection process, to state that it was a secured claim. Yes, we think it's administrative, but we also think it's secured.

---

[3]This colloquy, rather than the prepared ruling that was later read into the record, constitutes the portion of her decision that is relevant to this appeal.

[4]In her prepared ruling, the Judge set forth the law regarding the burden of proof for a proof of claim. She noted that, when a party properly files a proof of claim, that proof of claim constitutes prima facie evidence of the validity and amount of the claim, unless the debtor objects. (2/5/03 Tr. at 19.) The Judge further noted, that the objecting party must introduce some evidence rebutting this presumption and that, ultimately, the burden of establishing a claim rests with the claimant. (*Id.*)

(2/5/03 Tr. at 7, 8-9.) Counsel for Monarch argued that the Trustee's objection was not clear and did not explicitly state that the Trustee was objecting to the secured status of the post-petition claim. The Judge responded by pointing out that the objection indicated that Monarch would receive only a "percentage" of the claim, which was consistent with a "typical" administrative claim that was not secured:

> [The objection] says your distributions will be a percentage of your allowed amount. That's what it says at the bottom of the consent form. This is no reference to the secured status. [] And it's, obviously [] telling you you're going to have a percentage of the allowed amount, which is a typical administrative [] expense, unless it's administratively insolvent, but you're not going to get the whole amount.

(Tr. at 11-12.)[5]

One day later, on February 6, 2003, Monarch filed a Motion for Reconsideration, arguing that the Bankruptcy Court had relied on a ground (waiver) that was not asserted by the Trustee and arguing that there was no waiver in any event. Further briefing ensued.

On February 24, 2003, the Judge again came to court with a prepared ruling that she read into the record. (*See* 2/24/03 Tr. at 3-14.) She denied the motion for reconsideration, holding first that the "general issues of consent and waiver were raised" and were properly before the court. (*Id.* at 8.) She then rejected the trustee's argument that a lien could not have arisen based on the automatic stay. (*Id.* at 9.) Finally, as an additional ground supporting the decision, she held that Monarch had not established the existence of a common law bailee's lien on the

---

[5]Monarch's counsel also argued that he did not receive a copy of the objection and that the consent was signed by Monarch's president who is not a lawyer. The Judge stated that the objection form was sent to Monarch's general counsel (who is not the same person as Monarch's current counsel) and that this was the proper person to receive notice.

debtors' fuel because it had not expended any skill or labor to "improve or repair" the fuel in its possession. (*Id.* at 10-14.)

Monarch filed a notice of appeal on March 6, 2003, within 10 days of the entry of the February 24, 2003 order. Monarch has raised the following five issues on appeal:

> 1) Did the Bankruptcy Court Err in Holding that Monarch had no bailee's lien for post-petition services?
>
> 2) Did the Bankruptcy Court Err in Holding that a Consent to the Trustee's Objection to Monarch's Pre-petition Claim Waived Monarch's Lien Claim securing amounts due for post-petition services?
>
> 3) Did the Bankruptcy Court Err in Holding that A Consent to the Trustee's Objection was Enforceable *Per Se* without an evidentiary hearing?
>
> 4) Did the Bankruptcy Court therefore err in granting the Trustee's Motion for Summary Judgment as to the secured status of Monarch's post-petition claim?
>
> 5) Did the Bankruptcy Court err in denying Monarch's Motion for Summary Judgment?

(Monarch's Opening Br. at 2.)

## **STANDARD OF REVIEW**

Although the Trustee argues that this Court should review the Bankruptcy Court's decision under a "clearly erroneous" standard, this Court concludes that a *de novo* review is warranted. In a recent case, Judge Aspen concisely summarized the standard of review in a case, such as this one, where the Bankruptcy Court granted summary judgment on an undisputed factual record:

> As a conclusion of law, a grant of summary judgment by the bankruptcy court is reviewed *de novo* by the district court. The district court will affirm summary judgment if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996). Summary judgment may be affirmed on

debtors' fuel because it had not expended any skill or labor to "improve or repair" the fuel in its possession. (*Id.* at 10-14.)

Monarch filed a notice of appeal on March 6, 2003, within 10 days of the entry of the February 24, 2003 order. Monarch has raised the following five issues on appeal:

> 1) Did the Bankruptcy Court Err in Holding that Monarch had no bailee's lien for post-petition services?
>
> 2) Did the Bankruptcy Court Err in Holding that a Consent to the Trustee's Objection to Monarch's Pre-petition Claim Waived Monarch's Lien Claim securing amounts due for post-petition services?
>
> 3) Did the Bankruptcy Court Err in Holding that A Consent to the Trustee's Objection was Enforceable *Per Se* without an evidentiary hearing?
>
> 4) Did the Bankruptcy Court therefore err in granting the Trustee's Motion for Summary Judgment as to the secured status of Monarch's post-petition claim?
>
> 5) Did the Bankruptcy Court err in denying Monarch's Motion for Summary Judgment?

(Monarch's Opening Br. at 2.)

## **STANDARD OF REVIEW**

Although the Trustee argues that this Court should review the Bankruptcy Court's decision under a "clearly erroneous" standard, this Court concludes that a *de novo* review is warranted. In a recent case, Judge Aspen concisely summarized the standard of review in a case, such as this one, where the Bankruptcy Court granted summary judgment on an undisputed factual record:

> As a conclusion of law, a grant of summary judgment by the bankruptcy court is reviewed *de novo* by the district court. The district court will affirm summary judgment if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996). Summary judgment may be affirmed on

any ground supported in the record, even if it was not relied upon by the court below. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1115 (7th Cir. 1994). As the bankruptcy court made its determination below on the basis of legal conclusions on essentially undisputed facts, the standard of review is *de novo* as to each of the issues raised on appeal.

*In re Outboard Marine Corp.*, 278 B.R. 778, 782 (N.D. Ill. 2002).

## **DISCUSSION**

Although Monarch raises five issues for consideration upon appeal, these issues involve only two substantive questions: (i) whether Monarch waived its lien on its post-petition administrative claim when it signed the consent form; and (ii) whether Monarch had a valid lien on its post-petition claim. To prevail, Monarch must show that the Bankruptcy Court erred on both points. Because the Bankruptcy Court relied primarily on waiver, and only later addressed the lien issue in deciding the motion for reconsideration, we also will focus on the waiver issue.

At issue is whether Monarch waived its lien when it signed the consent form. The parties proceed under the assumption that the general law of waiver will apply, as neither side cites to any relevant case law from any particular jurisdiction on the elements needed to establish a waiver. It is generally accepted that a "waiver, which can be either express or implied, is an intentional relinquishment of a known right." *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 631 (7th Cir. 2001.) The Bankruptcy Judge stated that the waiver here was not express (*see* 2/5/03 Tr. at 6); therefore, we will analyze it as an implied waiver, which in turn requires us to review the circumstances surrounding the alleged waiver.

The Bankruptcy Court concluded that, under all the circumstances, Monarch should have taken some affirmative step when it signed the consent form to indicate that it was still asserting (and was not waiving) its post-petition lien. Reviewing the record *de novo*, we agree.

Monarch focuses on the fact that the objection never specifically stated that the Trustee was objecting to the post-petition lien and on the fact that Monarch's president (not its lawyer) signed the consent form. Before looking at these points, it is important to lay out the various contextual factors.

First, although it is true that Monarch had previously filed a proof of claim, it did so in 1992, which is more than eight years before the claims objection process in 2001. Second, Monarch signed the consent form as part of a claims objection process known as a negative notice procedure, whose whole purpose was to resolve a large amount of small claims. There were 11,000 claims in this case. As the Trustee correctly points out, the purpose of the claims procedure was to conserve the estate's scarce resources by first determining the validity of each proof of claim and once there was an issue as to the validity of the claim, to shift the burden to the claimant to establish the validity of its claim. (Trustee's Resp. Br. at 9.)

Third, the general language of the consent form made it obvious that the Trustee was trying to reach a comprehensive and final settlement of all claims. Page two of the form (which is quoted above) contained a number of general instructions along this line. For example, it stated that, if the creditor disagreed with the claim, it should file a written response containing "all reasons" supporting the creditor's objection and the creditor should attach "all documentary evidence in [its] possession." (Ex. O Trustee's App.) This and other statements on the same page made it clear that the intent of this process was to come to a final resolution of claims.

Turning to the specific language of the claim objection, it is true that the objection never specifically stated that the Trustee was objecting to the post-petition lien. But, as the Bankruptcy Judge concluded, the objection did so implicitly by stating that the Trustee was proposing to allow only a "percentage" of the administrative claim. She stated that this language was "typical" of an unsecured administrative claim. Given the context, the Bankruptcy Judge concluded that the objection form would have mentioned the existence of the lien if in fact the Trustee believed such a lien still existed. At a minimum, it is reasonable to hold that the Trustee's objection raised a question as to validity of the lien. In light of the negative notice procedure, Monarch should have made it clear that it was still asserting its lien claim – a step that would have been easy to take.[6]

Monarch responds by relying on the fact that its president signed the form and suggests that he is not versed in the workings of the bankruptcy court. Specifically, Monarch asks that this Court (as it asked the Bankruptcy Court) to not view Monarch's president's consent "through the prism of categories of claim well known to the Court and bankruptcy practitioners but rather from the perspective of a businessman reading the language proffered by the trustee." (Monarch's Br. at 22-23.) By making this argument, Monarch is effectively conceding a key point made by the Bankruptcy Judge; namely, that bankruptcy lawyers certainly would have recognized from the objection form that the Trustee was objecting to the lien on the post-petition

---

[6]As an example of this proactive approach, Monarch's current counsel (who apparently was not involved in the decision to sign the consent form) took the extra step during the briefing on summary judgment of pointing out that Monarch was still asserting a lien on its post-petition claim. Specifically, although counsel believed that the Trustee's opening summary judgment brief did not challenge the validity of the post-petition lien, Monarch's counsel nonetheless specifically pointed out in the response briefs the fact that Monarch was asserting that its lien "extends to and secures its post-petition administrative claim." (Ex. 19 Monarch's App.)

-12-

claim and was proposing that Monarch's claim be unsecured. Monarch, however, wants us to view its consent from the perspective of a business person. (*Id.* at 23.)

The Bankruptcy Court refused to give Monarch this deference. We agree. The Bankruptcy Court concluded that the Trustee sent the objection form to the people designated by Monarch on the claim form – Monarch's general counsel – and that he was "a perfectly appropriate person to designate." (2/5/03 Tr. at 8.) Monarch did not challenge this finding in its motion for reconsideration before the Bankruptcy Court and has not raised it as an issue in this appeal. Monarch suggests (without explicitly stating) that a lawyer never reviewed the objection and further suggests that its president was unknowledgeable about the workings of bankruptcy court. This argument is not persuasive. First, as noted above, the objection form was sent to Monarch's general counsel and therefore Monarch's president must have received the form from him, making it hard to believe that the lawyer did not offer some advice regarding what was being proposed. Second, Monarch had been represented by counsel throughout this lengthy bankruptcy proceeding. It is therefore fair and reasonable to assume that Monarch's president acted in consultation with a lawyer or chose to take the risk of not doing so. For these reasons, we do not see a need for an evidentiary hearing to delve into the question of how sophisticated Monarch's president was as to the workings of bankruptcy procedure.

To summarize, Monarch argues that, when it received an objection form that arguably asserted that Monarch no longer had a lien on its post-petition claim, it was entitled to rely on a proof of claim filed more than eight years earlier and was under no duty to communicate in some fashion that it was still asserting its lien. The Bankruptcy Court, which is more expert in these matters than this Court, concluded that such an assumption was unreasonable in light of the

amount of time that had elapsed from the filing of the claim, the negative notice procedure that was designed to settle these claims, and the "percentage" language in the claim form that indicated that the claim was not secured. For the reasons stated above, this Court agrees with the Bankruptcy Court's conclusions.

Having concluded that the Bankruptcy Court correctly held that Monarch waived its secured claim, this Court will not analyze the question of whether Monarch established a bailee's lien under Illinois common law, which was offered as an additional ground to support the decision.

## CONCLUSION

For the reasons set forth above, the decision of the Bankruptcy Court is affirmed. This is a final judgment.

**ENTER:**

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: July 30, 2003